IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:
SANDERSON PLUMBING PRODUCTS, INC.      CASE NO. 13-14506-JDW
Debtor     CHAPTER 11

**MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 363, 365, 503 AND 507, BANKRUPTCY RULES 2002, 3007, 6004, 6006, 9007 AND 9014 FOR ENTRY OF: (A) ORDER (I) APPROVING BIDDING PROCEDURES AND STALKING HORSE IN CONNECTION WITH SALE OF ASSETS OF DEBTOR, (II) APPROVING FORM AND MANNER OF NOTICE, (III) SCHEDULING AUCTION AND SALE HEARING; AND (IV) GRANTING RELATED RELIEF**

COMES NOW Sanderson Plumbing Products, Inc. (the "Movant" or the "Debtor") and files this its *Motion, Pursuant to Bankruptcy Code Sections 105(A), 363, 3655, 503 and 507, Bankruptcy Rules 2002, 3007, 6004, 6006, 9007 and 9014 for Entry of (i) Order Approving Bidding Procedures and Stalking Horse in Connection with Sale of Assets of Debtor, (ii) Approving Form and Manner of Notice, (iii) Scheduling Auction and Sale Hearing and (iv) Granting Related Relief* (the "Motion") and in support hereof would respectfully show as follows, to-wit:

**INTRODUCTION AND BACKGROUND**

1. The Debtor initiated this Chapter 11 case by the filing of a Voluntary Petition pursuant to Chapter 11 on October 25, 2013. Subsequent thereto, the Debtor has been, and is, the duly qualified, and acting Debtor-in-Possession in this Chapter 11 case. The Debtor is in control of its assets and is managing and operating the Debtor-in-Possession's businesses.

2. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105, 363, 365, 503, 507, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

3. The Debtor manufactures and markets bathroom and toilet seating products for

aircraft, commercial, residential, and healthcare applications. The Debtor was formerly known as Beneke Corporation, which was founded in 1893. The Debtor is based in Columbus, Mississippi.

4. Subsequent to the filing of the Petition, the Debtor received notice, from its major supplier of raw material and inventory that this supplier was drastically raising its prices for its products, thereby effectively pricing the Debtor out of business because the Debtor could not incur those kinds of costs for raw material and inventory and earn a profit for its finished goods. As a result, the Debtor has been, in effect, in a wind-down mode since receipt of that information.

5. The Court has previously entered an order authorizing the Debtor to employ Heritage Global, Inc. ("HGI") to serve as an advisor and consultant to the Debtor in connection with its exit strategies, including, but not limited to, seeking a buyer or buyers for the Debtor's assets either through a going concern sale, a sale motion under Section 363 of the Bankruptcy Code or an auction.

6. HGI and the Debtor have worked diligently to advertise, market and solicit interest in the Debtor's assets and its businesses in the marketplace.

## TERMS AND CONDITIONS OF
## STALKING HORSE AGREEMENT WITH STALKING HORSE BUYER

7. Following arm's length negotiations, the Debtor and Woodflour Corporation (the "Stalking Horse Buyer") agreed to a 363 sale asset purchase agreement (the "APA"), a copy of which is attached, marked as **Exhibit "A"**, and incorporated herein by reference. The assets to be included within the sale transaction include substantially all of the Debtor's assets, excluding cash and claims against third parties, and are hereinafter referred to as the "Assets". The sale transaction described therein is subject to higher or otherwise better offers through an auction

process pursuant to certain procedures (the "Bidding Procedures"), subject to the Court's approval.

8. As set forth in the APA, the Debtor has agreed to provide the Stalking Horse Buyer a break-up fee (the "Break-Up Fee") upon the certain occurrences set forth in the APA. The Debtor has further agreed to entertain offers for its assets that are "covered" by the APA only in amounts that are in excess of the purchase price offered by the Stalking Horse Bidder as set forth in the APA which is a material inducement to the Stalking Horse Bidder's agreement to submit its bid.

9. The Debtor requests that the Court approve the Stalking Horse Bidder and Break-Up Fee as set forth herein.

## PROPOSED BIDDING PROCEDURE

10. Sale of the Assets pursuant to the APA is subject to higher or otherwise better offers. To ensure that the highest or otherwise best offer is received for the Assets, the Debtor seeks to establish the proposed Bidding Procedures to govern the submission of competing bids at an auction.

11. The Debtor seeks approval of the following procedure and process (the "Sale Procedures"):

   A. **Bid Procedures**

   (i) <u>Qualified Bidders</u>. The Debtor and HGI shall seek to identify and recognize a number of bidders as qualified to bid on the Assets, based on, among other things, statements of interest and certain financial information demonstrating to the Debtor's and HGI's satisfaction the bidders' financial wherewithal to consummate a

purchase of the Assets (each, a "Qualified Bidder")[1]. HGI shall notify all Qualified Bidders in writing of their designation as Qualified Bidders and their ability to participate in the bidding process. Any party interested in purchasing the Assets may seek to become a Qualified Bidder and participate in the bidding process by notifying HGI and its counsel prior to the Bid Deadline (as such term is defined below) of its interest in bidding on the Assets and providing such information as may be required by HGI to demonstrate such potential bidder's financial wherewithal to consummate a purchase of the Assets and by submitting a Good Faith Deposit (as such term is defined below). HGI and the Debtor, in their discretion, may determine which additional parties constitute Qualified Bidders.

(ii) <u>Due Diligence.</u>  HGI and the Debtor will afford any potential Qualified Bidder such due diligence access or additional information as may be reasonably requested by the prospective Qualified Bidder and that, in its business judgment, HGI determines to be reasonable and appropriate. HGI will coordinate all reasonable requests for additional information and due diligence access from prospective Qualified Bidders with Qualified Bidders' requests being treated as a higher priority than prospective Qualified Bidders.  Unless otherwise determined by HGI, in its discretion, the availability of additional due diligence to a prospective Qualified Bidder will cease from and after the Bid Deadline (as such term is defined below).

(iii) <u>Non-Qualified Bidders</u>.  Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process ("Non-Qualified Bidder"). A Non-Qualified Bidder will be permitted to conduct initial due diligence, only until the Court approves the Motion, but not be permitted to conduct extensive due diligence, and will not be able to make a bid for the Assets under the Sale Procedures or participate in the Auction (as such term is defined below).

(iv) <u>Asset Purchase Agreement</u>.  All Qualified Bidders must submit to HGI, the Official Committee of Unsecured Creditors (the

---

[1] <u>The Stalking Horse Bidder is a Qualified Bidder.</u>

"Committee") and the Debtor an Asset Purchase Agreement that is "marked up" against the APA for the submission of Qualified Bids (the "Competing APA"). The offer shall:

a) provide that the bidder offers to purchase the Assets for cash;

b) clearly delineate all components of the proposed purchase price; including, but not limited to, the purposed treatment of all executory contracts and unexpired leases;

c) provide that the bidder's offer is irrevocable upon acceptance by the Debtor at the Auction;

d) disclose the relationship, if any, between the bidder and the Debtor and its insiders;

e) provide that the bidder's offer is subject to no, or minimal, due diligence contingencies, and if any contingencies, that they be removed by the Bid Deadline, and is not subject to board approval or financing contingency;

f) does not contain any other material conditions to closing.

(v) <u>Bid Deadline</u>. Bids must be submitted as set by the Court in the Order approving this Motion (the "Bid Deadline"). The Debtor will recommend to the Court that the Bid Deadline shall be sufficiently in advance of a hearing on the sale to be fair under the circumstances. A Qualified Bidder that desires to make a bid shall submit via electronic mail, U.S. Mail, facsimile or other delivery service, written copies of its bid to Kenneth W. Mann, Heritage Global, Inc., 16 N. Washington Street, Suite 102, Easton, Maryland 21601, Fax No. 866-604-9434; kmann@equitypartnershg.com and to Fred Cross at Heritage Global, Inc., 16 N. Washington Street, Suite 102, Easton, Maryland 21601, Fax. No. 866-604-9434, fcross@equitypartnershg.com; and to Craig M. Geno, Esq., Law Offices of Craig M. Geno, PLLC, P.O. Box 3380, Ridgeland, MS 39158-3380, Fax: 601-427-0050, cmgeno@cmgenolaw.com.

--

B. **Bid Requirements**

(i) <u>Assets</u>. Qualified Bidders may make a bid for all the Assets or some subset thereof. The Debtor reserves the right, in its discretion, to consider any bids for less than all of the Assets.

(ii) <u>Form and Content of Bid</u>. A Qualified Bidder must submit its bid in a signed competing APA, as defined above. The bid shall contain the terms and conditions, and amount, of the offer being submitted by the bidder.

(iii) <u>Required Supporting Materials</u>. A Qualified Bidder shall accompany its offer with (a) written evidence of available cash or a commitment for financing and such other evidence of ability to consummate the transaction as the Debtor may reasonably request; and (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed.

(iv) <u>Required Good Faith Deposit</u>. By the Bid Deadline, a Qualified Bidder must deposit with HGI a good faith deposit in the amount of $200,000 if bidding on substantially all assets or more than one bid lot, $100,000 if for only one bid lot (the "Good Faith Deposit"). The Good Faith Deposit must be made by a check or wire transfer and will be held by HGI subject to paragraph E herein.

(v) <u>Bid Lots</u>.

The Debtor through its agent HGI may offer the Assets for sale in the following lots:

(a) Lot 1 - Bulk Bid (everything as proposed and allocated in the APA);

(b) Lot 2 - Real Property Columbus, Mississippi;

(c) Lot 3 - Real Property Butler, Alabama;

(d) Lot 4 - Machinery and Equipment (tangible personal property located at Columbus, Mississippi and Butler, Alabama;

(e) Lot 5 - Inventory and Intellectual property;

(f) Lot 6 - All Accounts Receivable (A/R), however should the A/R not sell at the auction sale and Debtor elects to collect in aggregation with other bids, such AR collection should be computed, for purposes of aggregation, at a value equal of 85% of the net book value of such A/R, net of doubtful accounts.

(vi)    Qualified Bid. Subject to the terms of Section B(vi) below, a bid received by the Bid Deadline from a Qualified Bidder that meets the requirements in Sections B(i)-(iv) is considered a "Qualified Bid." The Debtor and HGI, in consultation with the Committee, reserve the right to wave material noncompliance with any one or more of these requirements and deem any otherwise non-qualifying bid to be a Qualified Bid. A Qualified Bid will be evaluated based upon factors such as: (a) the amount of the Qualified Bid; (b) the fair, net value to be provided to the Debtor under the Qualified Bid; (c) the ability to close or the likelihood of closing the proposed sale transaction without delay; and (d) any other factors that the Debtor and HGI may deem relevant.

(vii)    Rejection of Bid. Notwithstanding the foregoing, HGI and the Debtor, in consultation with the Committee, shall be entitled to reject any Qualified Bid, in their discretion, if the Qualified Bid:

- is on terms that are materially more burdensome or conditional than the terms of the Stalking Horse Buyer's bid;

- requires any indemnification of such Qualified Bidder;

- is not received by the Bid Deadline;

- requires any regulatory or other approval that would delay the closing;

- does not satisfy Section B;

- contains any material conditions to closing; or

- any other factors that the Debtor, in consultation with HGI and the Committee, may deem relevant and/or not in the best interest of the Debtor's estate.

Any bid rejected pursuant to this Section B(vi) shall not be deemed to be a Qualified Bid.

C. **Auction Process**

(i) <u>Bid Negotiations</u>. Upon the receipt of Qualified Bids, HGI and the Debtor, in consultation with the Committee, may negotiate with one or more Qualified Bidders regarding the terms of the applicable Qualified Bids.

(ii) <u>Auction.</u> The Auction will commence on a date to be set by the Court. The Auction will be conducted at the U. S. Bankruptcy Court, Northern District of Mississippi, Cochran U.S. Bankruptcy Courthouse, 703 Hwy 145N, Aberdeen, MS 39730.

    (a) <u>Qualified Participants</u>. Unless otherwise ordered by the Bankruptcy Court for cause shown, only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate in the Auction. HGI shall conduct the Auction.

    (b) <u>Bidding Process</u>. For all Lots and Selection of Successful Full Bidder. At the commencement of the Auction, The Stalking Horse Bidder shall submit its bid for all Lots as the initial bid (the "Opening Full Bid") . Subsequent to the Opening Full Bid, the next bid must exceed the Opening Full Bid by at least Two Hundred Seventy Five Thousand Dollars with subsequent increments of not less than $25,000 greater than that of the then-highest or otherwise best Qualified Bid. Upon completion of the Auction, the Debtor and HGI, in consultation with the Committee, shall select the bidder (the "Successful Full Bidder"), if any, that has submitted the Qualified Bid, if any, which, in the Debtor's reasonable judgment, after consultation with the Committee, represents the highest or otherwise best offer and is in the best interest of the Debtor, its estate and its creditors (the "Successful Full Bid").

--

  (c) <u>Bidding Process and Selection of Successful Partial Lot Bidder.</u>  At the commencement of the Auction, HGI shall identify the prevailing highest or otherwise best Qualified Bid for fewer than all of the Bid Lots (the "Opening Partial Lot Bid").  Subsequent to the initial Opening Partial Lot Bid, Bids shall be in increments of not less than $15,000 greater than that of the then-highest or otherwise best Qualified Partial Lot Bid.  During the Auction, the Court or the Debtor, in its discretion, in consultation with the Committee, may authorize different bid increments. Upon completion of the Auction, the Debtor and HGI, in consultation with the Committee, shall select the bidder (the "Successful Partial Lot Bidder"), if any, that has submitted the Qualified Bid, if any, which, in the Debtor's reasonable judgment, represents the highest or otherwise best offer and is in the best interest of the Debtor, its estate and its creditors (the "Successful Partial Lot Bid").

  (d) <u>HGI's Discretion</u>. Except as specifically provided in Sections (b) and (c) of this subsection, HGI, in its discretion, after consultation withe the Debtor and the Committee, may conduct the Auction in any manner deemed reasonably prudent to obtain the highest or otherwise best result for the estate.

**D. Sale Hearing**

A hearing with respect to the sale motion to be filed will take place at the Bankruptcy Court immediately following the conclusion of the Auction (the "Sale Hearing").  If any Successful Bidder is selected by HGI and the Debtor, in consultation with the Committee, the Debtor, in its discretion, will seek the entry of a final order from the Bankruptcy Court at the Sale Hearing approving and authorizing the proposed sale to the Successful Bidder on the terms and conditions substantially consistent with and in accordance with these Sale Procedures.  The

--

Debtor will also seek to have the 2nd highest bid approved as the "Back-up Bid" in the event the Successful Bidder is unable or unwilling to close.

### E. Return of Good Faith Deposit

The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any bidder whose bid was not the Successful Bid or the Back-up Bid. The Good Faith Deposit submitted by the Successful Bidder shall be applied against the payment of the purchase price at the closing of the sale to the Successful Bidder. Likewise, upon closing, the Back-up Bidder's Good Faith Deposit will be returned unless the Successful Bidder is unable to close at which point the Successful Bidder's Good Faith Deposit will be forfeited to the Debtor and the Back-up Bidder will become the Successful Bidder.

### BIDDING PROCEDURES ARE APPROPRIATE AND WILL MAXIMIZE VALUE RECEIVED IN SALE OF SELLER ASSETS

12. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., In re Edwards,* 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

13. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),* 107 F.3d 558, 564-65 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand").

--

14. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and, therefore, are appropriate in the context of bankruptcy sales. *See, e.g., O'Brien Envtl. Energy, Inc.,* 181 F.3d at 537; *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that bidding procedures "encourage bidding and . . . maximize the value of the debtor's assets").

15. The Debtor believes that the Bidding Procedures will establish sound parameters by which the proffered sale price of the Assets may be tested at the Auction, as well as the ensuing Sale Hearing, and evaluated as described herein. Such procedures will increase the likelihood that the Debtor will receive the greatest possible consideration for the Assets in a sale because they will ensure a competitive and fair bidding process. *In re Integrated Res., Inc.,* 147 B.R. at 659 (noting that break-up fees "encourage bidding and to maximize the value of the debtor's assets"). The Bidding Procedures also allow the Debtor to undertake the Auction process expeditiously, which the Debtor believes is essential to maintaining and maximizing the value of its estate.

16. The Debtor believes that the Auction and proposed Bidding Procedures promote active bidding from seriously interested parties and will dispel any doubt as to the best or otherwise highest offer reasonably available at this time for the purchase of the Assets. Moreover, the proposed Bidding Procedures will allow the Debtor to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtor believes that the Bidding

Procedures will encourage bidding for the Assets, are consistent with other procedures previously approved by this Court, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. *See, e.g., O'Brien Envtl. Energy,* 181 F.3d at 537.

17. Thus, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances because they will serve to maximize the value that the Debtor will obtain on account of the Sale of the Assets.

18. The Sale Procedures set forth in this Motion should be approved as the requested procedures (i) are the product of the Debtor's sound business judgment, (ii) will foster and enhance bidding and thus maximize the offers for the Assets, and (iii) are thus in the best interest of the Debtor's estate and its creditors.

19. The Sale Procedures are the result of extensive efforts by the Debtor and its professionals. The experience of the Debtor's counsel factored into the development of the proposed Sale Procedures. Accordingly, the Sale Procedures represent a sound business decision, made in good faith and with full information. Potential bidders did not have specific input into the development of the Sale Procedures, and thus the Sale Procedures were not subject to manipulation or self-dealing.

20    Further, the Sale Procedures should be approved as the procedures will foster and enhance the bidding process resulting in the maximization of potential bids. The proposed Sale Procedures clearly delineate a structured process for the solicitation, negotiation and proposition of bids, and auction, for the Assets. Since prospective purchasers will receive notice of the Sale Procedures and certain relevant dates, these prospective bidders will have full notice of the ground rules to bid, or not bid, on the Assets. The Debtor believes that this finality will cause prospective bidders to "step up to the plate" and present bids that would enable their participation at the Auction. The openness of the process will ensure a fair process for all potential bidders. Accordingly, the Debtor asserts that the proposed Sale Procedures will maximize potential offers by providing a fair, open and structured process.

21.    The anticipated result of implementation of the Sale Procedures - namely the sale of the Assets to a Successful Bidder - is in the best interest of the Debtor's estate and its creditors. Courts have concluded that bid procedures should be approved when the proposed transaction is in the best interest of the estate, creditors, equity holders and other parties involved, and maximizes value for the estate. *See In re Tiara Motor Coach Corp.*, 212 B.R. 133, 137 (Bankr. N.D. Ill. 1997); *In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill 1995); *In re American West Airlines, Inc.*, 166 B.R. 908, 915 (Bankr. D. Ariz. 1994).

22.    As noted earlier, the process will maximize the offers for the Assets. While the Debtor believes that the sale of the Assets is in the best interest of the estate, until the process has played out, the Debtor cannot predict the final outcome. However, the process should be permitted to proceed in order to flush out the highest or otherwise best offers of any and all

prospective bidders. The proposed Sale Procedures will accomplish that goal and thus the approval of the Sale Procedures is in the best interest of the estate and its creditors.

23. Notice of this Motion and/or an order approving this Motion, the Bid Deadlines, the date and the time of the Auction and the sale hearing and the deadline to object shall be provided to all parties and all creditors in interest on the General Service List maintained by this Court, all federal, state and county taxing authorities in all locations in which any of the Assets are located and all other parties as determined by this Court, including, all known bidders or prospective bidders having previously expressed an interest in the Assets. The Debtor submits that the notice described above is expansive and will meet or exceed the requirements of Rules 2002, 6004, 6006, 7004, 9008 and 9014 of the Bankruptcy Rules and any other applicable rules or orders of this Bankruptcy Court. The form, manner, scope and substance of the proposed notice will fairly apprize creditors and other interested parties of the proposed sale of the Assets, are reasonably calculated to reach all creditors and parties-in-interest, and are appropriate and sufficient under the circumstances of this case and in accordance with the Bankruptcy Rules. As a result, the proposed notice is sufficient to bar past, present and future claimants from objecting to the proposed sale. Therefore, notice is clearly sufficient, and the Debtor seeks a ruling to that effect from this Court.

24. The Debtor respectfully requests the Court to set the Motion for a hearing at its earliest possible opportunity, so that the Sale Procedures can be considered as expeditiously as possible, in order to give creditors and parties in interest as much notice as is reasonable under the circumstances of the existence of the Sale Procedures, and the approval (or denial) thereof.

25.  Other grounds to be assigned upon a hearing hereof.

THIS, the 2 9th day of April, 2014.

                                      Respectfully submitted,

                                      SANDERSON PLUMBING PRODUCTS, INC.

                                      By Its Attorneys,

                                      LAW OFFICES OF CRAIG M. GENO, PLLC

                                      By: _____
                                            Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Jarret P. Nichols; MSB No. 99426
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile
Bid Procedures Motion etc final 4-29-14.wpd


## CERTIFICATE OF SERVICE

    I, Craig M. Geno, do hereby certify that I have caused to be served this date, via Notice of Electronic Filing and/or U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
Sammye.S.Tharp@usdoj.gov

Tanya Ingman, Esq.
tingman@lowenstein.com

Bruce S. Nathan, Esq.
bnathan@lowenstein.com

Bradley T. Golmon, Esq.
bgolmon@holcombdunbar.com

R. Campbell Hillyer
cam.hillyer@butlersnow.com

William H. Leech
bleech@cctb.com

THIS, the 24rd day of April, 2014.

_____
Craig M. Geno