

SO ORDERED,

*Jason D. Woodard*

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SANDERSON PLUMBING | ) | |
| PRODUCTS, INC., | ) | Case No.:    13-14506-JDW |
| | ) | |
| DEBTOR. | ) | Chapter 11 |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART, AND DENYING IN PART, MOTION TO REQUIRE PAYMENT OF ADMINISTRATIVE CLAIM AND AMENDED MOTION TO REQUIRE PAYMENT OF ADMINISTRATIVE CLAIM (DKTS. # 406 and 480)

This matter came before the Court for hearing on August 25, 2015, on the Motion to Require Payment of Administrative Claim (Dkt. # 406) and Amended Motion to Require Payment of Administrative Claim (Dkt. # 480) (collectively, the "Motions for Payment") filed by the Industrial Development Board of the City of Butler, Alabama ("IDB") in the above-styled chapter 11 bankruptcy case of Sanderson Plumbing Products, Inc. (the "Debtor"). In its Motions for Payment, IDB sought payment of certain delinquent lease

1

payments pursuant to a lease agreement between the Debtor and IDB. At the hearing on the Motions for Payment, Craig Geno appeared as counsel for the Debtor, and A. Richard Maples, Jr. appeared as counsel for IDB. Testimony was heard from numerous witnesses, documents were received into evidence, and argument was presented to the Court. During closing argument, and following the Debtor's concession that certain lease payments had not been made, the parties stipulated that their dispute had been narrowed to whether the statute of limitations bars IDB's action to collect the amount owed pursuant to governing Alabama law.

At the conclusion of the hearing, the Court directed both parties to file post-hearing briefs on the statute of limitations issue. Both the Debtor and IDB submitted briefs on September 25, 2015. (Dkts. # 576 and 577, respectively). The Court then took the Motions for Payment under advisement.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B) and (O).

The Court has considered the pleadings, admitted evidence, arguments of counsel, and applicable law. For the reasons set forth below, the Court concludes that the Motions for Payment are due to be granted in part, and denied in part.

## I. FINDINGS OF FACT[1]

### A. The Lease Agreement

The Debtor, a Mississippi corporation authorized to do business in the State of Alabama, manufactured and marketed bathroom and toilet seating products.[2] In January 2000, the Debtor and IDB executed a Lease Purchase Agreement (the "Lease") whereby IDB leased certain real property located in the City of Butler, Alabama, to the Debtor for a manufacturing facility. The Lease provides that the term is for "a period of 15 (fifteen) years beginning on the 8th day of June, 1999, and ending on the 7th day of May, 2015". The ambiguity created on the face of the Lease between the stated "period of 15 (fifteen) years" and the 16-year span between the beginning year of 1999 to the ending year of 2015 was resolved by credible witness testimony solicited by both parties. Tom Whitaker ("Whitaker"), President and CEO of the Debtor, testified that he has been employed by the Debtor for 36 years and

---

[1] The Court makes the following findings of fact based upon the testimony and exhibits introduced at the hearing. To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

[2] During the pendency of the bankruptcy case, the Debtor ceased operations and sold substantially all of its assets (Dkt. #309). The sale is discussed in further detail below.

was personally involved in the Lease transaction. Whitaker testified that the ending year of "2015" stated on the Lease was a mistake as both parties understood the term of the Lease was for 15 years. The Debtor's position that the Lease term agreed upon was for 15 years was supported by the deposition[3] of Ben Smith ("Smith"), who was mayor of the City of Butler, Alabama, from 1996 to 2012, and also personally involved in the negotiation of the Lease. In his deposition, Smith testified that the agreement was for a 15-year lease. As such, the Court finds both parties intended the term of the Lease to be for 15 years, ending in May 2014.

The rent provision in the Lease provided that the Debtor would pay IDB monthly lease payments of $5,588.71, beginning on June 8, 1999 and continuing monthly throughout the Lease term or until such time as the Lease was terminated. The Lease also provided the Debtor with an option to purchase the property at the end of the lease term for the sum of $1.00.

On October 25, 2013, the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.[4] At the time of filing, the Debtor's lease payments for September and October 2013 were delinquent. On February 12, 2014, the Debtor filed a motion for additional time to assume or reject the

---

[3] The Debtor conceded that Smith's deposition testimony was admissible under the Federal Rules of Evidence 804(a)(5)(A) and (b)(1)(A).

[4] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

Lease (the "Motion for Time"). (Dkt. # 98). In response, IDB requested the Court to deny the Motion for Time, or condition approval on the Debtor's payment of all post-petition arrearage and timely payment of all future monthly payments under the Lease. (Dkt. # 128). On March 12, 2014, the Court entered an order granting the Debtor until May 22, 2014, to assume or reject the Lease conditioned on the Debtor paying the regular monthly lease payments for February and March 2014 within 30 days, and continuing payment of each regular monthly lease payment thereafter. (Dkt. # 136).

On May 1, 2014, the Debtor filed a motion to assume the Lease and assign the Lease to a "stalking horse" bidder or the ultimate purchaser of its assets (the "Motion to Assume"). (Dkt. # 191). The Debtor subsequently filed a motion to sell substantially all of its assets free and clear of liens which was later amended by the Debtor (collectively, the "Motion to Sell"). (Dkts. # 235 and 236). The Court entered orders approving the Debtor's Motion to Assume and Motion to Sell on August 7 and 8, 2014, respectively. (Dkts. # 307 and 309).

The Court directed the Debtor to escrow the sum of $93,000.00 from the sale proceeds to be used to pay the "cure costs" for the amount of delinquent payments under the Lease. The Debtor and IDB, however, disagreed as to the amount of the cure costs. The Debtor asserted the cure costs were $23,000.00, which was significantly lower than the $83,830.65 amount for

5

which IDB filed its administrative secured claim. As neither party disputed that, at a minimum, IDB was entitled to $23,000.00 in cure costs, the Debtor tendered a check in the amount of $23,000.00 to IDB as payment of the undisputed portion of its claim.

IDB filed its Motions for Payment requesting that the Court find that the remaining amount of the cure costs under the Lease is $60,830.65 and direct the Debtor to pay said amount plus interest thereon from the remaining funds held in escrow. During the course of the hearing on the Motions for Payment, the Debtor conceded that it owed some amount of delinquent lease payments to IDB. The Debtor argued, however, that the Motions for Payment should be denied as a matter of law because IDB is barred by the statute of limitations from collecting the delinquent lease payments since any action for breach of the Lease began to accrue at the time the lease payments became delinquent over 15 years ago. While IDB agreed with the Debtor that an action to collect delinquent lease payments is governed by the six-year statute of limitations under governing Alabama law, it disagreed with the Debtor on when its action accrued. IDB asserts the limitations period did not begin to run until the end of the lease term in May 2014, leaving it well within the statute of limitations.

Although the Debtor conceded that it owes delinquent lease payments, the Debtor did not concede that the $60,830.65 cure costs amount claimed by

6

IDB for delinquent lease payments was an accurate figure. As such, the Court must first determine the amount of the cure costs owed by the Debtor, and then decide whether the applicable statute of limitations bars IDB from collecting that amount from the Debtor.

During the hearing, the Debtor presented the testimony of Kirk Hardy ("Hardy"), a certified public accountant who was employed as the Debtor's controller from 2007 until 2013. As the controller, Hardy was responsible for handling the Debtor's financial records. Hardy testified that he was personally familiar with all lease payments made during his term as controller, and that all such payments were earmarked for the current month's rent. Hardy also testified as to the financial information related to the Lease in the consolidated financial statements, including consolidated statement of operations, shareholder's equity and cash flows for 2007 through 2010. In addition to Hardy's testimony, the Debtor presented the testimony of Patrick Charles Gough ("Gough"), also a certified public accountant, who reviewed the financial records on behalf of Horne LLP as part of its audit engagement. Gough testified as to the financial information related to the Lease contained in audit reports for 2006 through 2010.

While the audit reports and financial statements were discussed in detail, these documents fail to shed light on the amount of the cure costs owed by the Debtor. As Gough confirmed in his testimony, the audit reports

7

do not confirm the accuracy of the figures contained in the financial statements prepared by the Debtor, but instead, simply opine as to whether the audit revealed any material discrepancies. Consequently, the Court must rely on other evidence to determine the cure costs.

### B. Lease Payments Due During the 1999 and 2000 Calendar Years

Pursuant to the Lease, the Debtor agreed to pay IDB $5,588.71 per month, with the first payment to be paid on June 8, 1999. The evidence and testimony presented at the hearing supports IDB's position that the Debtor failed to make the initial payment due in June 1999, and several monthly lease payments thereafter. Mr. Smith confirmed that by way of a letter dated February 1, 2000, he requested that the Debtor cure delinquent lease payments due from June 8, 1999 through January 8, 2000, for a total cure cost of $44,709.68. The letter further reminded the Debtor that the February lease payment would be due on February 8, 2000. In his deposition, Smith testified that the Debtor did not cure the delinquent lease payments, but instead, simply began making monthly lease payments. The Debtor made a lease payment by way of a check dated June 2, 2000 (the "June 2000 Payment"), in the amount of $5,588.71 and earmarked for rent due in June 2000. Smith was uncertain as to whether any lease payments pre-dated the June 2000 Payment, but he was certain, however, that the first payment was in the amount of $5,588.71. Smith was not the only person uncertain as to

8

the date the Debtor began making monthly lease payments. During his testimony on behalf of the Debtor, Tom Whitaker testified that he was not aware of the date the Debtor paid the first lease payment, nor whether there were any payments that pre-dated the June 2000 payment. Consequently, the earliest lease payment reflected in the record for which the Debtor can be given credit was on June 2, 2000, to be credited toward the lease payment due in June 2000.[5]

The evidence and testimony support IDB's contention, that as of the date of the June 2000 payment, the Debtor was delinquent for the monthly lease payments due in June, July, August, September, October, November, and December of 1999, as well as for January, February, March, April, and May of 2000. As such, for the 1999 and 2000 calendar years, the Debtor was in default for twelve monthly lease payments of $5,588.71 for a total delinquency of $67,064.52 (the "1999/2000 Payments").

### C. Lease Payments Due During the 2013 and 2014 Calendar Years

Following the June 2000 payment, the Debtor continued to make monthly lease payments through August 2013. The Debtor failed, however, to pay the lease payment due for September 2013 and all subsequent payments thereafter, until the Debtor tendered a check to IDB dated March

---

[5] The Debtor has the burden on this issue as payment is an affirmative defense. *See United States v. Central Gulf Lines, Inc.,* 974 F.2d 621, 629-30 (5th Cir. 1992) (assigning the burden of proof to the party pleading an affirmative defense).

9

12, 2014, for the lease payments due in February and March 2014, pursuant to this Court's order resolving the Debtor's Motion for Time. (Dkt. # 136). In further compliance with that same order, the Debtor paid all subsequent payments due through the end of the Lease term. While the Debtor paid the lease payments due from February 2014 through May 2014, a delinquency remained for the monthly lease payments due September, October, November, and December of 2013, as well as for January 2014.[6] As such, for the 2013 and 2014 calendar years, the Debtor was in default for five monthly lease payments of $5,588.71 for a total delinquency of $27,943.55.

As stated earlier, the Debtor tendered $23,000.00 from the sale proceeds held in escrow to IDB on or around February 25, 2015, as payment of the amount of IDB's claim that was undisputed by the parties. Since the parties agree that IDB is entitled to the lease payments that became due during the 2013 and 2014 calendar years, the $23,000.00 payment from escrow must be credited against the $27,943.55 owed by the Debtor for delinquent lease payments during those years. This leaves the Debtor owing $4,943.55 as cure costs for lease payments due in 2013 and 2014 (the "2013/2014 Payments").

As there is no question IDB is entitled to the $4,943.55 cure cost for 2013 and 2014, the only issue for the Court to decide is whether IDB is

---

[6] In its responses to IDB's Motions for Payment (Dkts. #415 and 486), the Debtor conceded its failure to pay lease payments due from September 2013 through January 2014.

barred by the statute of limitations under governing Alabama law from an action to collect the 1999/2000 Payments.

## II.   CONCLUSIONS OF LAW

### A. Statute of Limitations Pursuant to Alabama Law

The parties agree that Alabama law governs the statute of limitations issue. The applicable statute of limitations for breach of contract claims pursuant to Alabama law is six years. Ala. Code § 6-2-34-9(4) and (9) (1975). An action for delinquent lease payments under a written lease agreement is a breach of contract claim within the meaning of this statute. *I-359, Inc. v. AmSouth Bank,* 980 So.2d 419 (Ala. Civ. App. 2007); *see also Wal-Mart Stores, Inc. v. Anniston Dev. Co.,* 853 So.2d 218 (Ala. 2002). As a general rule, the statute of limitations begins to run from the time the right of action accrues, which is usually when the contract is breached. *AC, Inc. v. Baker,* 622 So.2d 331 (Ala. 1993) (citing *Stephens v. Creel,* 429 So.2d 278, 280 (Ala. 1983); *Lipscomb v. Tucker,* 294 Ala. 246, 258, 314 So.2d 840, 850 (1975)). If the general rule is applicable to the Lease between the Debtor and IDB, a separate cause of action was created each time the Debtor failed to pay a lease payment when due, and a distinct limitation period attached to each delinquent payment. *See id.*

In its brief, IDB asserts that the case of *Williams v. Williams,* 497 So.2d 481 (Ala. 1986) is applicable to the issue before the Court. In *Williams,*

11

the Supreme Court of Alabama addressed whether the statute of limitations barred a suit to collect a debt on a promissory note where no payments had been made for a period of ten years following execution of the note. *Id.* at 482. The court unequivocally noted its historical rule that when a promissory note contains an acceleration clause, if the creditor does not choose to accelerate the due date, the debt does not mature for the purpose of the statute of limitations until the last installment is due and unpaid. *Id.* (citing *Williamson v. Shoults,* 423 So.2d 874 (Ala. Civ. App. 1982); *Summers v. Wright,* 231 Ala. 372, 165 So. 87 (1935)). This Court found no instance where the historical rule varied beyond its explicit application to "promissory notes."

In 1996, subsequent to the *Williams* decision, but prior to the Lease being signed, Ala. Code § 7-3-118 (1975), which governs the statute of limitations for negotiable instruments, became effective. The statute states in relevant part, "an action to enforce the obligation of a party to pay a *note* payable at a definite time *must be commenced within six years after the due date or due dates stated in the note* or, if a due date is accelerated, within six years after the accelerated due date." *Id.* at § 7-3-118(a) (emphasis added). Consistent with the application of Alabama's historical rule as stated in *Williams*, Ala. Code § 7-3-118(a) is explicitly applicable to a "note payable at a definite time." It is clear to this Court that the historical rule as stated in *Williams,* as well as §7-3-118(a), governs only promissory notes. As such, and

12

absent clear authority under Alabama law, the Court declines to apply the same categorical rule to the lease agreement at issue in this case.

Likewise, the Court found no authority to support the position that as a general rule under Alabama law, a cause of action for breach of a lease agreement does not accrue until the end of the lease term. There are cases, however, that support the proposition that although a separate cause of action accrues for each missed lease payment, upon a showing of abandonment by the tenant, a landlord may sue to recover all accrued payments at the end of the lease term. *See, e.g., Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.,* 873 So.2d 1092, 1104 (Ala. 2003)*; see also, Ryals v. Laney,* 338 So.2d 413, 415 (Ala. Civ. App. 1976) (citing *McClure v. Daniel,* 233 So.2d 500, 502 (Ala. 1970)). Unlike this case, however, the statute of limitations was not an issue before the Alabama courts in those cases.

In order to determine whether the Alabama statute of limitations bars IDB from collecting the 1999/2000 Payments, the Court must first determine when IDB's cause of action accrued. The Court finds particularly instructive the discussion by the Supreme Court of Alabama in *Bowdoin Square.* 873 So.2d 1092. In *Bowdoin Square,* the landlord argued that it was entitled to the total amount of lease payments due under a 20-year lease, regardless of whether the payments had accrued before the lease was terminated. *Id.* at

13

1104.  In holding that the landlord was not entitled to pursue a claim for rent payments that had not yet become due, the court stated:

> Ala. Code 1975, § 6-5-280, provides that if a contract is severable or if the breaches occur at successive periods during the existence of the contract, such as where money is to be paid in installments, *an action will lie for each breach. Leases for periodic rent fall within this category. Each failure to pay an installment when due creates a separate cause of action.* Because an action may not be maintained before a cause of action has accrued, a landlord suing for breach of a lease can recover only rent that has accrued and that remains unpaid.

*Id.* at 1104 (internal citations omitted) (emphasis added).

The court provided further guidance as it reiterated its rule regarding when a landlord may sue to recover rent for the whole term of a lease:

> Upon a showing of abandonment of the premises by the tenant, the landlord may recover the whole lease payments, either by suing at the end of the lease term when all of the lease payments have accrued, or *it may bring a separate action for each missed payment as it accrues*.

*Id.* at 1104-05 (internal citations omitted) (emphasis added).

As reflected in the discussion in *Bowdoin Square,* Alabama law has historically required both a showing of abandonment by the tenant and continued vacancy of the leased premises as conditions precedent to affording landlords the option of choosing between an action against the tenant for breaches as they occur, and an action to collect all accrued payments at the end of the lease term under common law. *See id.* It is apparent by the facts already discussed that there was no abandonment in this case. More

importantly, the discussion in *Bowdoin Square* supports the proposition that a separate cause of action was created and began to accrue each time the Debtor failed to pay a lease payment when due pursuant to the Lease.

The Court finds and concludes that pursuant to the authorities discussed above, the six-year statute of limitations began to run when the Debtor breached the lease agreement—that is, each time the Debtor failed to make a lease payment when due. A separate cause of action accrued for each delinquent payment during the 1999 and 2000 calendar years. Therefore, the Court finds that the statute of limitations pursuant to governing Alabama law bars IDB's action against the Debtor for the 1999/2000 Payments.

### III. CONCLUSION

Based on these findings of fact and conclusions of law, this Court finds that IDB's Motions for Payment are due to be granted in part and denied in part.

Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that

1. IDB's Motions for Payment are **GRANTED** as to the $4,943.55 which represents the cure costs owed by the Debtor for the 2013/2014 Payments.

2. IDB's Motions for Payment are **DENIED** as to the 1999/2000 Payments.

3. Following the expiration of the appeal period, conditioned on no appeal having been filed, the Debtor is authorized to tender payment to IDB for the 2013/2014 Payments from the funds held in escrow. The remainder of the funds shall then be released from escrow and distributed according to the terms of the confirmed plan.

## END OF ORDER ##