

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SANDERSON PLUMBING | ) | Case No.:  13-14506-JDW |
| PRODUCTS, INC., | ) | |
| | ) | |
| Debtor. | ) | Chapter:  11 |

### MEMORANDUM OPINION AND ORDER

This cause came before the Court for hearing on May 8, 2018, on three separate motions.  On June 4, 2015, Sanderson Plumbing Products, Inc. ("the Debtor") filed an *Objection to Claim of Lowndes County Tax Collector* (the "Objection to Claim") (Dkt. # 482), asserting that it is not responsible for the real estate taxes owed to the Lowndes County Tax Collector (the "County"). The Debtor argued that the Mississippi Development Authority ("MDA"), the purchaser of the Debtor's real estate, agreed to be responsible for the taxes. The Objection to Claim also argued that the County overvalued the Debtor's personal property, resulting in an inflated tax bill.  The personal property has

1

been sold and the actual value of the property is now known, and the Debtor argues that this figure should be used to determine the tax liability.

Next, the Mississippi Development Authority ("MDA") filed a *Motion of Mississippi Development Authority for Correction to or Relief from Judgment or Order of the Court Granting Amended Motion to Sell Real Property Free and Clear of Liens, Claims and Interests Outside the Ordinary Course of Business Entered August 6, 2014 (Dckt. #306)* (Dkt. # 538). MDA asserts that although the *Order Granting Amended Motion to Sell Real Property Free and Clear of Liens, Claims and Interests Outside the Ordinary Course of Business* (the "Agreed Sale Order") (Dkt. # 306) clearly provides that MDA is responsible for payment of the ad valorem taxes on the real property that it purchased, this provision was included by mistake and is unenforceable.

Lastly, on August 13, 2015, the Debtor filed the *Motion of Sanderson Plumbing, Inc. Requesting Determination of Tax Liability Pursuant to Sections 105, 505, 506 of the Bankruptcy Code, and for Relief from Excess Taxation for Tax Years 2011, 2012, 2013, 2014* (the "Motion to Determine Tax Liability") (Dkt. # 542), arguing that its taxes be determined using the actual values from the sales of its real and personal property rather than the County's valuations.

As these three motions are intertwined, a single evidentiary hearing was held to determine: (1) the amount of the taxes, and (2) the entity responsible

for payment of the taxes. This Order sets the amounts. The issue of responsibility for payment of the taxes will be resolved by separate order.

As it relates to the amounts, the Objection to Claim is due to be sustained in part and overruled in part. Similarly, the Motion to Determine Tax Liability is due to be granted in part and denied in part. The sale prices will be used to redetermine the 2014 taxes. The amount of the tax liability for all previous years will remain unchanged.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 USC §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 USC § 157(b)(A), (B), (N), and (O).

## II. FACTS[1]

The Debtor filed its chapter 11 petition for relief on October 25, 2013. (Dkt. # 1). The County filed a proof of claim for unpaid ad valorem taxes on real and personal property in the aggregate amount of $453,195.15. (Claim No. 75-1).

---

[1] To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

In the bankruptcy case, the Debtor sought to sell substantially all of its assets. On August 6, 2014, the Agreed Sale Order was entered, authorizing the sale of the Debtor's real property to MDA and the sale of its personal property to SPP Acquisition Joint Venture, LLC ("SPP"). Both sales later closed. No party disputes that the sale was a valid, good faith sale for reasonably equivalent value.

A.   Personal Property

To determine the value of personal property, the County depends on the businesses to report personal property values yearly. The personal property assessed value is then multiplied by the millage rates to determine the tax assessment.

In 2013, the County valued the Debtor's personal property at $8,929,092.00, resulting in personal property tax liability of $192,681.05. In 2014, the personal property was valued at $6,712,282.00,[2] resulting in personal property tax liability of $160,525.11. No appeals were filed to these tax assessments.

In late 2014, the personal property was purchased by SPP for $1,525,000.00. (Dkt. # 306). The assessed value, 16.5% of true value, is

---

[2] In 2014, the County applied a twenty-five percent reduction to the Debtor's personal and real property values because the Debtor's commercial productivity had decreased and MDA, an exempt entity, was purchasing the real property.

4

$251,625.00. Multiplying this by the county, city, and school millage rates yields an annual personal property tax liability of $36,198.77.

### B. Real Property

The County inspects the real property once every four years and assesses a value. This value is used until the County revisits the property. The County assessed the property in question in 2010 and 2014.

In 2013, the County valued the Debtor's real property at $2,823,260.00, resulting in a real property tax liability of $60,923.27. In 2014, the real property was valued at $1,706,290.00, resulting in a real property tax liability of $37,096.52. No appeals were filed as to these tax assessments, either.

In late 2014, the real property was purchased by MDA, for a credit bid of $1,557,500.00, plus the assumption of any ad valorem taxes owed. (Dkt. # 306, ¶ 19). The assessed value of $256,987.50, 16.5% of the true value, multiplied by the county, city, and school millage rates results in an annual real property tax liability of $36,970.22. [3]

---

[3] Arguably the sale price, and the resulting tax liability, should be higher because MDA assumed the obligation to pay past due taxes.

### III.  CONCLUSIONS OF LAW

A.  Amount of the Tax Liability

*1. Time to Determine Ad Valorem Taxes Under the Bankruptcy Code*

Section 108 of the Bankruptcy Code[4] provides in relevant part:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2)  two years after the order for relief.

11 U.S.C. § 108.  This section sets out the general time limits for commencing an action once a bankruptcy case is filed.  However, "when Congress amended § 505(a) by adding § 505(a)(2)(C), it intended to create an exception to the general time limits for contesting a tax assessment set forth in § 108(a)." *In re Read,* 692 F.3d 1185, 1187 (11th Cir. 2012).  Section 505(a) provides in relevant part:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>    **(2) The court may not so determine—**
> . . .
>> **(C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting**

---

[4] The Bankruptcy Code is defined as Title 11 of the United States Code.

>> or redetermining that amount under applicable nonbankruptcy law has expired.

11 U.S.C. 505(a) (emphasis added).

Few courts have addressed the effect of § 108 on § 505(a), but those that have hold that § 108 cannot extend the deadlines established by state law. *Read*, 692 F.3d at 1189 (holding that the bankruptcy court erred in holding that the Debtor's request for a redetermination of the amount of the ad valorem taxes was timely, notwithstanding that the time to contest the tax assessment had expired under state law); *In re Breakwater Shores Partners, L.P.*, 2012 WL 1155773, at *3 (Bankr. E.D. Tex. Apr. 5, 2012) (holding that § 505(a)(2)(C) "is properly construed as requiring that a determination request must be prior to the expiration of the deadline established for review under state law without possibility of extension under Bankruptcy Code § 108."); *In re Village at Oakwell Farms. Ltd.*, 428 B.R. 372, 376-80 (Bankr. W.D. Tex. 2010) (holding that where a debtor does not seek redetermination of ad valorem taxes under state law, the bankruptcy court loses the right to determine the tax liability); *In re ATA Airlines, Inc.*, 2010 WL 3955574, at *2 (Bankr. S.D. Ind. Oct. 4, 2010) ("§ 505(a)(2)(C) bars a bankruptcy court from redetermining tax liability for an ad valorem tax if the applicable period for contesting or redetermining the amount of the tax under nonbankruptcy law has expired before the motion to determine tax liability is brought before the bankruptcy court . . . .").

7

Thus, § 108 does not extend the time given to the Debtor to challenge the ad valorem tax assessments under state law. Regardless of when the petition was filed, the Debtor is bound by the state law time limits for appealing ad valorem taxes.

### 2. *Mississippi Time Limits to Appeal Ad Valorem Taxes*

Under Mississippi law, the board of supervisors of each county certifies the tax[5] assessments at a hearing on the first Monday of every August. MISS. CODE ANN. § 27-35-89 (1972). Generally, ad valorem taxes can only be challenged by filing an objection to be heard at that August meeting. Section 27-35-93 states:

> A person who is dissatisfied with the assessment, may at the August meeting, present objections thereto in writing which shall be filed by the clerk and docketed and preserved with the roll. All persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board of supervisors or by operation of law, except minors and persons non compos mentis.

MISS. CODE ANN. § 27-35-93.

There is another avenue to challenge the tax assessment for certain situations. Section 27-35-143 of the Mississippi Code provides in relevant part:

> The board of supervisors of each county shall have power, upon application of the party interested, or by the assessor on behalf of such party, or otherwise as prescribed in Sections 27-35-145 through 27-35-149, to change, cancel or decrease an assessment in the manner herein provided at any time after the assessment roll containing such

---

[5] All references to "tax" include real and personal property taxes. MISS. CODE ANN. § 27-35-1.

> assessment has been finally approved by the State Tax Commission, and prior to the last Monday in August next, under the following circumstances and no other:
>
> . . .
>
> 12. When the property has been assessed for more than its actual value; but in such cases the board shall require proof, under oath, of such excessive assessment by two (2) or more competent witnesses who know of their own personal knowledge that the property is assessed for a higher sum than its true value.

MISS. CODE ANN. §27-35-143. The State Tax Commission receives the certified assessments within thirty days of the board of supervisors' August meeting. MISS. CODE ANN. § 27-35-123. This gives the interested party about a year to object to the assessment. As the Mississippi Attorney General has recognized:

> [T]he Tax Assessor/Collector does not have authority to make changes in the assessment rolls for prior years, except for the immediately preceding year, and such change must be made prior to the end of August, i.e., before the time for tax sales. This applies to both real property and personal property.

Joseph M. Shepard, 2011 WL 4383416 (Miss. A.G. 2011).

The Debtor is requesting a determination for the tax years of 2013 and 2014.[6] The timeline for the tax assessments and the Debtor's filings is as follows:

---

[6] The Debtor's Motion to Determine Tax Liability challenged the taxes for 2011-2014, but at the hearing, Debtor's counsel withdrew this request for 2011 and 2012, because those taxes had already been paid.

- August 5, 2013: Public hearing certifying 2013 tax assessment[7]

- October 25, 2013: Debtor filed chapter 11 petition[8]

- August 3, 2014: Public hearing certifying 2014 tax assessment[9]

- August 25, 2014: § 27-35-143 special circumstances appeal period for 2013 taxes ends[10]

- June 4, 2015: Debtor filed Objection to Claim

- August 13, 2015: Debtor filed Motion to Determine Tax Liability[11]

- August 31, 2015: § 27-35-143 special circumstances appeal period for 2014 taxes ends[12]

The Debtor had until August 25, 2014 to appeal the tax determination for 2013, but filed nothing until June 4, 2015. The Debtor had until August 31, 2015 to appeal the 2014 taxes, and filed its Objection to Claim on June 4, 2015 and Motion to Determine Tax Liability on August 13, 2015. Hence, only the assessments for 2014 can now be challenged.

---

[7] MISS. CODE ANN. § 27-35-89.

[8] (Dkt. # 1).

[9] MISS. CODE. ANN. § 27-35-89.

[10] Mississippi Code Annotated § 27-35-143 provides additional time to appeal in certain circumstances discussed below.

[11] (Dkt. # 542).

[12] MISS. CODE. ANN. § 27-35-143.

### *3. Determination of 2014 Tax Assessment*

Even though this Court has jurisdiction to determine the 2014 taxes under § 505, it has the discretion to determine if it will exercise that jurisdiction. *Internal Revenue Serv. Luongo (In re Luongo)*, 259 F.3d 323, 330 (5th Cir. 2001) ("simply because tax law is somehow implicated does not automatically trigger abstention."). In this case the valuation is simple. The real and personal property were fully marketed, with multiple bids submitted, and the terms heavily negotiated. The sale prices reflect the market value for these assets. An Agreed Sale Order has been entered authorizing the sales and the sales closed. MISS. CODE ANN. § 27-35-50(1) ("True value shall mean and include, but shall not be limited to, market value, cash value, actual cash value, proper value and value for the purposes of appraisal for ad valorem taxation."). Valuation is easily determined here and the Court declines to abstain. *Luongo*, 259 F.3d at 331.

The Mississippi Code includes the market price of property in its definition for "true value" as it applies to ad valorem tax assessments. MISS. CODE ANN. § 25-35-50. The Debtor presented proof of the sale amount for the real and personal property, the parties do not disagree as to what the sale prices were or that it was a good faith sale, and, most notably, the sale prices are set out in the Agreed Sale Order entered by this Court (Dkt. # 306).

Thus, for the year of 2014, the value of the personal property used to determine the tax liability should be the sale price of $1,525,000.00, resulting in a personal property tax liability of $25,162.50. The value of the real property used to determine the 2014 real property tax liability should be the sale price of $1,557,000.00, resulting in a real property tax liability of $25,690.50.

## IV. CONCLUSION

The personal and real property tax liabilities for years prior to 2014 may not be altered. The actual sale values will be used to determine the 2014 personal and real property ad valorem taxes.

The personal property tax liability for 2013 is $192,681.05. The personal property tax liability for 2014 is $25,162.50. The Debtor is responsible for the personal property tax liability, which totals $217,843.55.

The 2013 real property taxes owed to Lowndes County is $60,923.27. The 2014 real property taxes owed to Lowndes County is $25,690.50. The responsible entity for the real property taxes will be determined by separate order. Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED** that the Objection to Claim is **SUSTAINED IN PART,** as it relates to the determination of the tax amount for the year 2014, and **OVERRULED IN PART**, as it relates to all previous years. The Motion to Determine Tax Liability is **GRANTED IN PART**, as it relates to 2014, and **DENIED IN PART**, as it relates to years prior to 2014.

##END OF ORDER##

13